IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

WILLIAM HAYES                                                      PLAINTIFF

v.                           Civil No. 05-2124

EADS BROS. FURNITURE COMPANY                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C 2000(e), *et seq.,* 42 U.S.C. § 1981, and the Arkansas Civil Rights Act of 1983, § 16-123-101, *et seq.* Plaintiff contends he was discriminated by Defendant in being subjected to a hostile work environment, disparate treatment, and retaliation/constructive termination. Currently before the Court are Defendant's Motion for Summary Judgment (Doc. 6), Plaintiff's Response (Doc. 14), Defendant's Motion to Strike (Doc. 18), and Plaintiff's Response (Doc. 19). For the reasons stated herein, Defendant's Motion to Strike is DENIED and Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

### A. Background

William Hayes ("Plaintiff"), an African American male, was employed by Eads Bros. Furniture Co. ("Defendant") from August 2002 until his termination on December 14, 2004, as a warehouse worker and delivery truck driver. Defendant was paid an hourly wage plus any overtime hours and $50.00 per delivery. To make local deliveries, Plaintiff drove a small utility truck. Defendant employed drivers with a commercial driver's license ("CDL") as over-the-road non-local

delivery drivers.

In March 2004, Plaintiff delivered furniture to Hot Springs, Arkansas. Plaintiff contends Charles Phelps, Defendant's sales representative, referred to Plaintiff as a "nigger", and told Plaintiff to "get some of the other 'nigs' to go help" unload the furniture. Plaintiff contends Phelps told him that Plaintiff was doing "slaves work" and that he, Phelps didn't have "cotton pickin hands". Plaintiff contends the racially derogatory comments were made in the presence of Sam Miller, Defendant's Vice President. Plaintiff contends he complained to Miller who told him to overlook the comments. Plaintiff contends he also complained to his supervisor, John McAlister, who reported it to Miller and Bill Eads, III, Defendant's President. Plaintiff contends he was told not to worry about it. Phelps denies making any inflammatory comments, but admits asking Plaintiff why he was late. (Doc. 6, Exh. C, Phelps Affidavit)

In May 2004, Plaintiff contends he was berated by Defendant's customer, Herberto Paz with Furniture Palace, who called him a "nigger," "black faggot," and other names. Plaintiff contends the racial comments were made in front of other Defendant's employees and management, but that nothing was done to stop it. Plaintiff contends he was berated by Paz on three other occasions within a two month time period, but that Defendant failed to take appropriate action to stop this conduct, although Defendant knew or should have known about

2

Paz's behavior. When Plaintiff complained of Paz's behavior, he was told to "go hide in the rear of the building" while Paz was present.

During one of Plaintiff's interactions with Paz, Plaintiff says that Paz drove a vehicle at a high rate of speed at him and missed him by inches. On another occasion, Plaintiff contends that Paz brought a large man with him to Plaintiff's workplace and stated that he has "somebody for your ass, nigger." (Doc. 17, Exh. D, p. 76.)

Plaintiff contends he was an over-the-road driver for Defendant and paid substantially less than Caucasian over-the-road drivers. Plaintiff contends the Caucasian drivers were paid mileage, reimbursed for meals and lodging, and paid a "drop fee". Defendant contends Plaintiff was not an over-the-road driver, only a warehouse worker who made local deliveries. Persons hired by Defendant to be over-the-road drivers held CDLs, and Plaintiff did not hold a CDL.

**B. Standard of review**

Since "[c]laims premised under the Arkansas Civil Rights Act of 1993 are analyzed in the same manner as Title VII claims," *see Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 n.3 (8th Cir. 2000), the analysis under Title VII provides the standard to be followed in this case as to both the state and federal claims of discrimination.

A motion for summary judgment will be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(c).

AO72A
(Rev. 8/82)

A "material" fact is one "that might affect the outcome of the suit under the governing law ..." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" issue of material fact exists when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party. *Id.* In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, the burden then shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," and "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 256-7 (citing Fed. R. Civ. P. 56(e)).

**C. Analysis**

    1. Hostile work environment

Plaintiff claims that he suffered racial harassment which created a hostile work environment while working for the Defendant. An employee experiences a hostile work environment when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the

4

conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). To succeed on a hostile work environment claim, a plaintiff must show that (1) he belongs to a protected group, (2) he was subject to unwelcome harassment, (3) a causal nexus exists between the harassment and the protected group status, (4) the harassment affected a term, condition, or privilege of his employment and (5) the employer knew or should have known of the harassment and failed to properly respond. *Tademe v. St. Cloud State Univ.*, 328 F.3d 982, 991 (8th Cir. 2003). To determine whether a plaintiff has demonstrated that the harassment affected a term, condition or privilege of his employment, we look at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Woodland v. Joseph T. Ryerson & Son, Inc.*, 302 F.3d 839, 843 (8th Cir. 2002) (citing *Harris*, 510 U.S. at 21-23).

Reviewing the evidence in the light most favorable to Plaintiff as we are required to do, any remarks attributed to Phelps, on one isolated occasion, fail to demonstrate a change in terms and conditions of Plaintiff's employment. The incident was not frequent, severe, physically threatening, and did not interfere with his

5

performance. "More than a few isolated incidents are required," and the harassment must be so intimidating, offensive, or hostile that it "poisoned the work environment." *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 967 (8th Cir. 1999) (citations omitted). The "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" does not rise to an actionable level. *Meritor Sav. Bank*, 477 U.S. at 67.

In addition to the above conduct, Plaintiff contends that his workplace was hostile because Defendant is liable for the actions of its customer, Paz, due to Defendant's awareness of the harassment and failure to investigate and/or remedy the situation. Plaintiff contends that a customer, Paz racially harassed him on at least four separate occasions, with two occasions involving an implied and/or actual threat of physical harm.

"[A]n employer must take a [] harassment complaint seriously for if it fails to act appropriately, it may face liability even where the harasser was a customer or unrelated third party." *Royer v. City of Oak Grove*, 374 F.3d 685, 687, n.5 (8th Cir. 2004) (citing 29 C.F.R. § 1604.11(e) (2003) ("An employer may also be responsible for the acts of non-employees . . . where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action.")) (additional citation omitted).

AO72A
(Rev. 8/82)

The Court finds that there are genuine issues of material fact as to what Defendant knew or should have known, whether the racial harassment was severe or pervasive enough to affect a condition of Plaintiff's employment, and whether Defendant took appropriate corrective action. *See Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 795 (8th Cir. 2004). The Court finds that Defendant's summary judgment motion on the hostile work environment claim is DENIED.

### 2. Retaliation/Constructive Termination

After filing an EEOC complaint, Plaintiff was either terminated or resigned. Plaintiff contends that he was terminated after he stated he no longer wished to deliver to the harassing customer, Paz. Defendant contends that Plaintiff's termination was the result of his refusal to make deliveries. Bill Eads III discharged Plaintiff, saying that he took Plaintiff's refusal to make deliveries as meaning "he didn't want to do his job anymore. So I told him he didn't have a job." (Doc. 17, Exh A, Bill Eads III Affidavit, p. 20.) Plaintiff denies that he ever refused to make deliveries, but stated that he did not wish to deliver to the harassing customer. There are factual disputes as to whether Plaintiff was terminated or resigned and whether Plaintiff's termination/resignation was in retaliation to his complaints regarding racial harassment. Accordingly, Defendant's summary judgment motion on the retaliation/constructive termination claim(s) is DENIED.

### 3. Disparate Treatment

Plaintiff contends that he received lower wages than Caucasian employees for the same work. Plaintiff was paid $50 for each delivery made, while the Caucasian employees, who held CDLs and drove the larger 18-wheeler tractor-trailers, were paid by the mile with additional benefits (such as having sleeping accommodations). To establish a disparate treatment claim, a plaintiff must provide circumstantial or direct evidence that the complained-of conduct was motivated by race discrimination. Because Plaintiff has failed to provide evidence that the difference in pay was motivated by race discrimination, we analyze his disparate treatment claim under the *McDonnell Douglas* framework. *See McDonnell Douglas Corp. V. Green*, 411 U.S. 792 (1972).

Under the *McDonnell Douglas* framework, Plaintiff must establish a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he met the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated employees that were not members of his protected class were treated differently. *See Philip v. Ford Motor Co.*, 413 F.3d 766 (8th Cir. 2005). The fourth element can be met only if Plaintiff proffers "'specific, tangible evidence' that employees who were 'similarly situated in all respects' to him received different treatment from [Defendant]." *Id.* (quoting *Rose-Maston v. NME Hosp., Inc.*, 133 F.3d 1104, 1109 n.4 (8th Cir. 1998); *Gilmore v.*

8

*AT&T*, 319 F.3d 1042, 1046 (8th Cir.2003)).

Plaintiff has failed to establish a prima facie case, as he has not met the fourth element. Plaintiff has shown that he was paid less than persons hired as over-the-road drivers who have CDLs. Plaintiff does not hold a CDL, nor was he hired to drive the larger 18-wheeler tractor/trailers, as were the over-the-road drivers. Plaintiff does not have the skill or licensing necessary to drive the larger tractor/trailers, thus he has not shown that he is similarly situated to the Caucasian over-the-road drivers. The Defendant is entitled to summary judgment on Plaintiff's disparate treatment claim, the summary judgment motion on the disparate treatment claim is GRANTED.

## D. Motion to Strike

Defendant has filed a Motion to Strike Plaintiff's Response to Defendant's Motion for Summary Judgment. Defendant contends that because Plaintiff's Response was filed one business day after the date upon which the Response was due, it should be stricken. We find that Defendant was not prejudiced by the delay and Plaintiff, in good faith, attempted to file the Response through the Court's electronic case filing system on the day the Response was due. Upon learning that the Response had not been filed, Plaintiff filed the Response the next business day. Thus, Plaintiff's good faith failure to file the Response on the date due amounts to excusable neglect. *See Pioneer Investment Services Co. V. Brunswick Assocs. Ltd.*

*Partnership*, 507 U.S. 380, 385 (1993); Wisland *v. Admiral Beverage Corp.*, 119 F.3d 733, 737 (8th Cir. 1997). Defendant's Motion to Strike is DENIED.

**E. CONCLUSION**

Accordingly, the Motion for Summary Judgment on the claims of hostile work environment and retaliation/constructive discharge are hereby DENIED. The Motion to Strike is hereby DENIED. The Motion for Summary Judgment on the disparate treatment claim is hereby GRANTED and that claim is dismissed with prejudice. Plaintiff's claims of hostile work environment and retaliation/constructive discharge shall proceed to a trial currently scheduled for the week of September 11, 2006.

IT IS SO ORDERED this 28th day of July 2006.

/S/ Robert T. Dawson
Robert T. Dawson
United States District Judge

AO72A
(Rev. 8/82)